UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 18- 7068**

Britney Rudler, *on behalf of herself and all others similarly situated*,

        Plaintiff,

v.

Houslanger & Associates, PLLC, Todd Houslanger, Esq., and Bryan Bryks, Esq.,

        Defendants.

COMPLAINT

*Jury Trial Demanded*

**FEUERSTEIN, J.**

**SHIELDS, M.J.**

Plaintiff Britney Rudler, on behalf of herself and all others similarly situated, for her complaint, alleges as follows:

## NATURE OF ACTION

1. This class action seeks to vindicate the rights of consumers harmed, deceived, or otherwise pressured by blatantly false, deceptive, and unethical statements of New York law and legal ethics by the high-volume collection law firm of Houslanger and Associates, PLLC in New York state court consumer collection actions.

2. Specifically, Defendants have made a practice of making false representations to *pro se* litigants regarding the ethics of accepting or seeking help from attorney without a full, expensive engagement.

3. Such representations are, in fact, perfectly ethically acceptable and commonplace, and New York's ethics rules were amended in 2009 in a way that explicitly contemplates exactly what Defendants claim is unethical, untoward, or otherwise impermissible.

4.      Defendants' stratagem is particularly pernicious—and particularly effective—because of the double bind it places upon the consumers they sue: the consumers are falsely told they may not seek legal help (except by risking spending more than they can afford) or seek to have an attorney assist them in small or discrete ways, but in order to unravel the deceptiveness of **that** false claim, the consumer would likely need to speak to an attorney.

5.      Defendants' back up these false claims by citing cases that have long since been abrogated or otherwise made obsolete, knowing that non-attorneys will not necessarily know that when an attorney only cites a handful of cases from the 1970's, that authority is suspect.

6.      Defendants' goal in engaging in this practice—and therefore the source of unjust gains they have reaped therefrom—is the manipulation and intimidation of non-attorney consumers into accepting unjust and unfair settlements, and to otherwise move through their caseload without allowing consumers process to which they are entitled.

7.      Defendants' false and unfair misrepresentations violate the Fair Debt Collection Practice Act, codified at 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), which was designed to prohibit precisely these sorts of abusive, deceptive, and unfair debt-collection practices, as well as New York General Business Law § 349 ("NYGBL").

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and § 2202.

10.     The Court has ancillary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Plaintiff lives in this district and the acts and transactions that give rise to this action occurred, in substantial part, in this district.

12. Venue is also proper in this district because Defendants conduct business in this district and the injury occurred in this District.

13. Venue is further proper in this district because Defendant Houslanger & Associates, PLLC, and individual defendants Todd E. Houslanger and Bryan Bryks have their principal place of business in this District and many of the wrongful acts alleged herein had their wrongful effect or otherwise caused harm in this District.

## PARTIES

*Named Plaintiff*

14. Named Plaintiff Britney Rudler ("Ms. Rudler" or "Plaintiff") has at all relevant times been a resident of Queens County, New York, which county is in this District.

15. Ms. Rudler is a "consumer" as defined in 15 U.S.C. § 1692a(3).

16. Defendant Houslanger & Associates, PLLC (the "Houslanger Firm"), was and is a domestic professional service limited liability corporation authorized to do business in New York, with its principal place of business in Huntington, New York.

17. The Houslanger Firm is a high-volume debt collection law firm and, upon information and belief, collects upon thousands of judgments every year.

18. The Houslanger Firm's website, www.toddlaw.com, lists its two practice areas as "judgment enforcement" and "collections."

19. The Houslanger Firm regularly collects debts on behalf of others and the collection of debts is its principal business purpose.

20. The Houslanger Firm is a debt collector under FDCPA § 1692a(6).

21. Todd E. Houslanger is an attorney and has at all relevant times been a principal and owner of the Houslanger Firm.

22. Attorney Houslanger has final, supervisory over the Houslanger Firm's collections practice.

23. Attorney Houslanger's principal business endeavor is the collection of debts, and he regularly attempts to collect debts alleged to be due another.

24. Attorney Houslanger is a debt collector under FDCPA § 1692a(6).

25. Bryan Bryks is an attorney and has at all relevant times been an associate with the Houslanger Firm.

26. On information and belief, Attorney Bryks receives instruction and guidance in handling his legal matters from Attorney Houslanger.

27. Attorney Bryks' principal business endeavor is the collection of debts, and he regularly attempts to collect debts alleged to be due another.

28. Attorney Bryks is a debt collector under FDCPA § 1692a(6).

29. Each and every Defendant herein uses multiple instrumentalities of interstate commerce, as well as the mails in connection with and in furtherance of Defendants' collection activities.

## NAMED PLAINTIFF'S EXPERIENCE

30. In a New York State Court matter styled *Cyprus Fin. Recoveries v. Britney L. Rudler*, with Index No. 39584/2009 and brought in Tioga County Supreme Court (the "Debt Action"), the Houslanger Firm is the latest in a series of attorneys representing the nominal

plaintiff, Cyprus Financial Recoveries, whose place has been most recently taken by PALISADES COLLECTION, LLC.

31. In September of 2009, a Summons and Complaint were filed in the Debt Action but never served upon Britney Rudler.

32. The plaintiff moved for and received a default judgment in the Debt Action, and a default judgment was entered on April 26, 2010

33. Ms. Rudler did not receive notice of the default judgment until July of 2018, whereupon she moved *pro se* to have the judgment vacated.

34. In response to her motion, Attorney Bryks filed an Affirmation in Opposition, which included the following paragraph:

> "16. Upon information and belief, the Defendant's Affidavit in Support is ghostwritten. Upon information and belief, the basis being the service of the Second Stage Income Execution upon Martin Clearwater & Bell, a firm duly organized and containing attorneys licensed to practice law in the State of New York, the Defendant is employed by attorneys who may have helped her with her Order to Show Cause and supporting Documents. Without disclosing said ghostwriting to the court and opposing counsel, the practice of ghostwriting has been deemed unethical by both the New York State Bar Association and the Association of the Bar of the City of New York (*see* NY State Bar Assn Comm on Prof Ethics Op 613 [1990]; Assn of Bar of City of NY Op 1987-2 [1987]; as well as Federal Courts (see *Klein v. H.N. Whitney, Goadby & Co.,* 341 F Supp 699, 702 [US Dist Ct SD NY 1971]; *Klein v. Spear, Leads, & Kellogg,* 309 F Supp 341 343 [US Dist CT SD NY])."

Exhibit A (all formatting preserved).

35. The Tioga County court heard oral arguments from Ms. Rudler and Attorney Bryks, then sent the parties to discuss settlement.

36. During those settlement discussions, Attorney Bryks more than once orally told Ms. Rudler that it was "unethical" and "improper" for her to be consulting in any way with an attorney without a full engagement and appearance by that attorney in the case.

37. Attorney Bryks similarly represented that it was "unethical" and "improper" for Ms. Rudleer to be consulting in any way with an attorney without providing Attorney Bryks with that attorney's name and contact information.

38. During those discussions, upon information and belief, Attorney Bryks also made other substantial misrepresentations of law intended to be impenetrable or otherwise inscrutable to a non-attorney.

39. One such misrepresentation was as to the functioning of marshal's poundage under New York law (which was owed because the Houslanger Firm engaged the marshal at an unknown point in 2018 to collect on the default judgment it held against Ms. Rudler). Attorney Bryks represented that the settlement terms he had been proposing to Ms. Rudler included marshal's poundage because, in sum and substance, "poundage due is statutory and can't be waived."

40. In fact, under New York law, it is often the case that a creditor, rather than a debtor, is responsible for satisfying marshal's poundage where that creditor engaged the marshal's services. *See Cabrera v. Hirth*, 87 A.D. 3d 844, 849 (1st Dept 2011) ("[i]t has long been customary that where a sheriff levies against defendant's property and the matter is thereafter settled, **the judgment creditor** is liable to the sheriff for the payment of poundage fees as the party who invoked the Sheriff's service.") (emphasis added); *County of Westchester v. Riechers*, 6 Misc. 3d 584, 588 (Sup Ct, Westchester County 2004) (finding "the assertion that liability should be imposed upon a judgment debtor under circumstances where, as here, the only affirmative act of the debtor is his participation in the negotiation and execution of a settlement agreement [including vacatur of the judgment]" to be "unpersuasive.").

41. Attorney Bryks made numerous requests to communicate via telephone, which Ms. Rudler was not comfortable with.

42. When Ms. Rudler explicitly requested that all communication proceed in writing, Attorney Bryks replied via an email dated October 29, 2018 that read:

> "I'll be glad to send you a revised agreement in writing but many of your requested changes can result in a compromise when discussed if I know your concerns. I've always been fair and have been doing my best to work with you. To illustrate that point I've already received approval to lower the settlement amount to reach the number you wrote in since the poundage due is statutory and can't be waived.
>
> Please note that you have every right to hire an attorney at anytime but as indicated in our opposition papers **it is improper for an attorney to act through you undisclosed**.
>
> I am not in the office right now so will email you amended agreement tomorrow."

Exhibit B (emphasis added).

43. Contrary to Attorney Bryks and the Houslanger Firm's assertions, New York State's ethics rules in fact explicitly approve of both ghostwriting and undisclosed, limited purpose engagements related to active litigation matters.

44. New York revised the applicable ethics rule in 2009 (as part of a wholesale overhaul of the New York's code of ethics), abrogating interpretation of prior rules.

45. In the time since the cases cited by the Houslanger Firm in their papers, as mentioned *supra* ¶ 34, the American bar generally has changed its attitude towards ghostwriting and limited purpose representation.

46. In a 2006 Formal Opinion, the ABA Stating Committee on Ethics wrote: "there is **no reasonable concern** that a litigant appearing pro se will receive an unfair benefit from a tribunal as a result of behind-the-scenes legal assistance, the nature or extent of such assistance is immaterial and need not be disclosed." ABA Formal Opinion 07-446 at 3 (superseding prior

ABA Informal Opinion 1414, which in the Committee's words, "took a middle ground" on ghostwriting) (emphasis added).

47. Similarly, following New York's passage of new rules in 2009, the NYCLA Committee on Professional Ethics wrote in 2010: "we believe that **ghostwriting is not an ethical violation** in light of the plain language of New York's newly adopted Rule 1.2(c)." NYCLA Opinion 742 (emphasis added).

48. Indeed, now-Rule 1.2(c) adopted and adapted ABA model Rule 1.2(c) (which had no equivalent under the old New York rules), adding the bolded text below:

> ABA Rule 1.2(c): A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.
>
> NYRPC Rule 1.2(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances, the client gives informed consent and **where necessary notice is provided to the tribunal and/or opposing counsel**.

49. Model Rule 1.2(c) was already understood to permit ghostwriting, and NYRPC Rule 1.2(c)'s addition of the "where necessary" clause has been interpreted to only require disclosure when explicitly required by law or court rules.

50. Upon information and belief, to the extent the Houslanger Firm's practice of asserting to *pro se* litigants that limited purpose representation is unethical predated the 2009 revision, the Houslanger Firm now either has actual knowledge of the change, or is subject to professional duties such that its members are required to be aware of the change.

51. A Google search for the terms "attorney," "ghostwriting," and "New York" returns a full page entirely of recent guidance from ethics committees, Federal Courts (including the Second Circuit, thus overruling anything that was left of 1970's SDNY cases Attorney Bryks cites), and various legal analysts, all noting that the law and rules have changed dramatically since the 1990 opinion ethics opinion and 1970's cases cited in the Houslanger Firm Affirmation *supra* paragraph 34.

52. Upon information and belief, Attorney Bryks and Attorney Houslanger both have affirmative duties as officers of the Court not make misrepresentations of law to courts and *pro se* opponents alike.

53. Upon information and belief, the Houslanger Firm makes deceptive and misleading representations about the ethical rules concerning ghostwriting and other limited representation or advice because such representations are effective; the representations create easier and more favorable settlements for the firm and its clients, and more compliant litigation opponents for its lawyers.

54. More generally, but with regard in particular to situations with *pro se* litigants, Courts rely upon the attorneys opposing those litigants not to intentionally misstate the law, or at least to make clear when they are arguing for an extension or change of the law.

55. Defendants' false, deceptive, and misleading statements may influence the least sophisticated consumer's decision on ability to challenge a debt; and might reasonably prompt such a consumer to settle rather than litigate, or to settle on less favorable terms than he or she would otherwise accept.

## CLASS ALLEGATIONS

56. The plaintiff, Britney Rudler, brings this action on behalf of herself and also on behalf of a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

57. Plaintiff seeks to represent the Class (hereafter, "the Class") defined as follows:

   1. natural persons;

   2. who were sued in a New York state court consumer collection action;

   3. and appeared *pro se*;

   4. in any case where the Houslanger Firm was counsel at any point; and

   5. the Houslanger Firm, on behalf of a client or themselves, demanded and/or collected payment from the consumer (whether by means of garnishment, restraint, or any other communication) or otherwise attempted to collect; and

   6. in which, at any time after 2009, the Houslanger Firm represented that that it was unethical, untoward, or otherwise improper for the consumer to receive legal help in the form of "ghostwriting" or other limited purpose legal representation.

58. The Class consists of three Subclasses, defined as follows:

   1. The FDCPA Subclass: all those who meet the class definition set forth above and with regard to whom the most recent representation of the kind referenced in Paragraph 57(6) *supra* occurred within one year of the filing of the instant Complaint;

   2. The NYGBL Subclass: all those who meet the class definition set forth above and with regard to the most recent representation of the kind

referenced in Paragraph 57(6) *supra* occurred within one year of the filing of the instant Complaint; three years of the filing of the instant Complaint; and

3. The Self-Concealment Subclass: all those who meet the class definition set forth above, and who, owing to the self-concealing nature of Defendants' misrepresentations of New York law, did not learn of the existence of the FDCPA or GBL § 349 claims until now.

59. All members of the Class are also members of one or more of the subclasses.

60. Excluded from the Class and subclasses are:

1. anyone employed by counsel for Defendants in this action; and
2. any Judge to whom this case is assigned, as well as their immediate family and staff.

*Numerosity*

61. The Class and subclasses potentially include hundreds of members and are sufficiently numerous that joinder of all members is impractical.

62. Although the exact number of Class members are unknown to Plaintiff, they are readily ascendable from Defendants' records.

63. Indeed, a simple electronic document search—and a brief review to exclude otherwise privileged materials—using search terms like "ghostwrit*", "disclose /10 opposing counsel", and the names and reporter citations of the cases Defendants cite in their litigation materials (see *infra* ¶ 34) would quickly and practically produce a list of cases where the defendants would be members of the class, along with addresses and other contact information for the defendant members of the Class in those cases.

***Existence and Predominance of Common Questions***

64. Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over questions affecting only individual Class members.

65. These common questions include, *inter alia*:

   1. whether The Houslanger Firm had a practice or policy of representing to *pro se* opponents that seeking limited purpose legal representation, in the form of ghostwriting or otherwise, was unethical;

   2. whether such false, misleading, and deceptive representations were materials in nature;

   3. whether Defendants violated the FDCPA;

   4. whether Defendants violated GBL § 249;

   5. whether Plaintiff and other class members are entitled to statutory damages, costs, and attorney's fees under the FDCPA;

   6. whether Plaintiff and other Class members are entitled to damages, costs, and attorney's fees under NYGBL § 349.

***Typicality***

66. Plaintiff Rudler's claims are typical of the claims of the Class because, among other things, Plaintiff is:

   1. a natural person;

   2. who was sued in a New York state court consumer collection action;

   3. and appeared *pro se*;

   4. in a case where the Houslanger Firm was counsel; and

5. the Houslanger Firm, on behalf of a client or themselves, demanded and/or collected payment from Plaintiff (by means of garnishment and or any other communication) or otherwise attempted to collect; and

6. in which, after 2009, the Houslanger Firm repeatedly represented that that it was unethical, untoward, or otherwise improper for Plaintiff to receive legal help in the form of "ghostwriting" and other limited purpose legal representation.

67. Thus, Plaintiff's claims—based on the same acts and/or omissions as the claims of all other class members—are typical of the claims of the class.

68. In other words, all of the claims are based on the same factual and legal theories and the Plaintiff, together with each class member, has been subjected the same false, deceptive and unfair communications and acts by Defendants.

*Adequacy*

69. Plaintiff will fairly and adequately represent the interests of the class members. Her interests do not conflict with the interests of the members of the Class she seeks to represent.

70. Plaintiff has retained counsel with experience in prosecuting individual-against-large-entity litigation and with class actions. There is no reason why this Plaintiff and her counsel will not vigorously pursue this matter.

*Superiority*

71. The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

72. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

73. Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

74. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

75. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

76. In the alternative, the Class may be certified because:

    1. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

    2. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

3. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I
*(Violation of the FDCPA)*

77. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

78. Congress enacted the FDCPA to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

79. By undertaking the above referenced collection activities. Defendants violated 15 U.S.C. § 1692 *et seq.*

80. Specifically, and without limitation, Defendants violated the FDCPA (specifically, 1692e) through a variety of false, deceptive, misleading, and unfair conduct in the collection of alleged debts, including without limitation:

1. falsely, deceptively and misleadingly representing the ethics and/or propriety of ghostwriting and other limited purpose legal assistance to members of the Class (§1692e(10));

2. threatening, implicitly or explicitly, to seek legal redress for the purported ethical violations in accepting ghostwriting or other limited purpose legal assistance (15 U.S.C. § 1692e(5));

3. using the above violations to make other false, deceptive, or misleading statements more effective and/or less likely to been discovered (by virtue of the consumer's fear of consequences for obtaining legal help), including independently false representations of

the legal status of debts (15 U.S.C. § 1692e(2)(A) and (B), *see e.g., supra* ¶¶ 38-39);

81. As a result of these violations, Plaintiff and all others similarly situated have suffered actual damages, including:

   1. attorney's fees and costs;
   2. aggravation, nervousness, emotional distress, fear, loss of concertation, indignation, and pain and suffering (including especially but not exclusively, in connection with the false prospect of legal action or consequence for the purportedly unethical and improper acceptance of legal assistance).

82. As a result of these violations, Defendants are liable for statutory damages of up to $1,000 each, actual damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

## COUNT II
*(Violation of NYGBL §349)*

83. Plaintiff hereby repeats, re-alleges, and incorporates by reference all foregoing paragraphs.

84. Each of the deceptive acts and practices set forth above, constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

85. These deceptive acts and practices were committed in conduct of business, trade, commerce, or the furnishing of a service in this state.

86. Specifically, the deceptive acts and practices occurred in the course of Defendants' attempts to collect a purported consumer debt that Defendants alleged had been reduced to a New York state court judgment, and took place largely in New York.

87. Defendants' deceptive acts and practices were consumer-orientated.

88. Defendants' conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public, but rather involve misleading and deceptive representations of the law regarding the propriety and availability of certain, lower-cost forms of legal help, and involved communications sent by a high-volume debt collector to a consumer.

89. Defendants' willfully and knowingly engaged in the deceptive tactics set forth herein in bad faith and, on information and belief, do so on a regular and recurring basis.

90. Defendants' statements and conduct, as set forth herein and in the attached Exhibits, were materially misleading.

91. As a result of these violations of NYGBL § 349, Plaintiff suffered, *inter alia*, actual damages, as set forth above at paragraph 81.

92. For these and all the reasons set forth herein, Plaintiff is entitled to actual damages, declaratory judgment, an injunction of the deceptive practices set forth herein, three times actual damages up to $1000, punitive damages, costs and reasonable attorneys' fees.

**WHEREFORE**, the Plaintiff respectfully requests that this Court award:

(a) Declaratory Judgment that Defendants' conduct violated the FDCPA and NYGBL § 349;

(b) Injunctive relief pursuant to NYGBL § 349;

(c) Actual damages;

(d) Statutory damages;

(e) Costs and reasonable attorneys' fees;

(f) Such other and further relief as law or equity may provide.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 39, Plaintiff hereby demands a trial by jury as to all issues so triable.

**[SIGNATURE ON FOLLOWING PAGE]**

Dated: December 11, 2018.

                                        Respectfully Submitted,

                                        /s/
                                        J. REMY GREEN[1]

                                        Cohen&Green P.L.L.C.
                                        1639 Centre Street, Suite 216
                                        Ridgewood, NY 11385
                                        (929) 888.9480 (telephone)
                                        (929) 888.9457 (facsimile)
                                        remy@femmelaw.com

---

[1] Application for admission *pro hac vice* submitted contemporaneously with filing.