**FILED**
**CLERK**

11:54 am, Jan 29, 2020

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BRITNEY RUDLER,

       Plaintiff,

       -v-

HOUSLANGER & ASSOCIATES, PLLC,
TODD HOUSLANGER, ESQ., and
BRYAN BRYKS, ESQ.,

       Defendants.

--------------------------------------------------------X

Case No. 18-cv-7068 (SFJ)(AYS)
**Memorandum and Order**

FEUERSTEIN, S., Sr. District Judge:

I.    <u>Introduction</u>

       Presently before the Court is the fee application of Plaintiff Britney Rudler ("Plaintiff" or "Rudler"), filed after she accepted a Rule 68 offer of judgment (hereafter, the "Fee Application"). (*See* ECF No. 19; *see also* Support Memo (ECF No. 19-2) ("What is before the Court is not an FDCPA case on its merits—only a post-Judgment fee petition. All that remains in this case is to determine what reasonable attorney's fees are due to the Plaintiff.").) Defendants Houslanger & Associates, PLLC (hereafter, the "Firm"), Todd Houslanger, Esq. ("Houslanger"), and Bryan Bryks, Esq. ("Bryks"; together with the Firm and Houslanger, the "Defendants") oppose the amount of fees sought. (*See* ECF No. 19-18 ("Opposition" or "Opp'n").) For the following reasons, the Fee Application is GRANTED in part.

II.    Background

*A.  The Prior State Court Action*[1]

In 2009, in New York State court, the Firm commenced a collection action on behalf of its client (hereafter, "Client") and against Rudler (hereafter, the "State Action").  In April 2010, the Client was awarded a default judgment against Rudler (hereafter, the "NYS Judgment").  After learning of the NYS Judgment in July 2018, Rudler moved, *pro se*, to vacate it.  In opposing Rudler's motion, Bryks submitted an "Affidavit in Opposition" (*see* Ex. A (ECF No. 1-1), *attached to* Complaint (hereafter, "Opp'n Aff.")) stating, *inter alia*, that Rudler's "Affidavit in Support" may have been ghostwritten and claiming: "Without disclosing said ghostwriting to the court and opposing counsel, the practice of ghostwriting has been deemed unethical by both the New York State Bar Association and the Association of the Bar of the City of New York." (*See* Complaint, ¶34 (quoting Opp'n Aff., ¶16 (citations omitted)).)

After hearing oral arguments on Rudler's motion to vacate, the state court judge directed the parties to discuss settling their dispute (hereafter, the "Settlement Discussions").  In the course of those Settlement Discussions, Attorney J. Remy Green ("Green") appeared on Rudler's behalf in the State Action.  (*See* Green Decl. (ECF No. 19-3), ¶¶18-19.)  On October 2018, Green wrote the state court judge a status letter stating, *inter alia*, that "[s]ettlement discussions are at an impasse . . . ." (Oct. 31, 2018 Letter from Green to Hon. Eugene D. Faughnan, N.Y.S. Supreme Court, Tioga County, at 1, *attached as* Ex. 3 to Green Decl. (ECF No. 19-6); hereafter, the "Green Status Letter".)  In response, however, the Firm reported to the state court judge that its Client and Rudler had reached a settlement in principle in the State Action.  (*See* Nov. 1, 2018

---

[1]  For context, the Court provides this background, which is drawn from Plaintiff's Complaint.  It is not intended to constitute findings of facts by the Court.

Letter from Bryks to Hon. Eugene D. Faughnan, N.Y.S. Supreme Court, Tioga County, at (unnumbered) 2), *attached as* Ex 4 to Green Decl. (ECF No. 19-7)).  This Court is unaware of the current status of said Settlement Discussions or the State Action.

    *B.  The Present Action*

On December 12, 2018, Plaintiff, through Green, commenced this putative class action, alleging violations of the Fair Debt Collection Practice Act, 15 U.S.C. § 1692 *et seq*. and New York State General Business Law § 349 based on alleged false, deceptive, and misleading representations and unfair conduct.  (*See* Complaint, ECF No. 1, *in toto*.)  Said class purportedly consisted of state court judgment *pro se* debtors who challenged underlying judgments and whose judgment creditors were represented by the Firm.  (*See id.*, ¶¶66-68.)  More specifically, Rudler alleged that during the State Action Settlement Discussions, Bryks made several misrepresentations including, *inter alia*, "that it was 'unethical' and 'improper' for her to be consulting in any way with an attorney without a full engagement and appearance by that attorney in the case."  (*Id.*, ¶36; *see also id.*,¶¶37-39.)  However, she further alleged that such representations were inaccurate since "New York State's ethics rules in fact explicitly approve of both ghostwriting and undisclosed, limited purpose engagements related to active litigation matters."  (*Id.*, ¶43; *see also id.*, ¶¶44, 47-49.)  It was Rudler's contention that such a misrepresentation could improperly influence the least sophisticated consumer in deciding whether to challenge a debt or settle it.  (*See id.*, ¶55.)

On December 24, 2018, less than two weeks after this action was commenced, in lieu of answering or otherwise responding to Plaintiff's Complaint, the Defendants filed a Notice of a Rule 68 Offer of Judgment, offering Plaintiff $1,200.00 "as well as any accrued costs together with a reasonable attorneys' fee as determined by the court *to be incurred up through the date of*

*this Offer.*" (*See* ECF No. 7 (emphasis added).) On January 7, 2019, Plaintiff filed her Notice of Acceptance of Offer of Judgment. (*See* ECF No. 9.) Said judgment was entered on February 7, 2019, which stated that "[p]ursuant to Rule 68 of the Federal Rules of Civil Procedure, final judgment is entered in favor of plaintiff Britney Rudler against all defendants in this action for the total sum of One Thousand Two Hundred Dollars and No Cents ($1,200.00), *plus any accrued costs and reasonable attorneys' fees as determined by the Court to be incurred before, up through, and including the date of the Offer (December 24, 2018).* (ECF No. 14 (emphasis added).)

On March 26, 2019, Rudler filed her Fee Application seeking $33,557.19 in attorneys' fees and $2,702.50 in costs. (*See* Green Decl., ¶54.) Plaintiff's requested attorneys' fees are comprised of the following:

| Attorney/Category | Hours | Hourly Rate | Subtotals |
|---|---|---|---|
| Green re: prefiling research & filing Complaint | 57.6 hrs. | $375/hr. | $21,600.00 |
| Green re: Fee Application | 25.5 hrs. | $375/hr. | $ 9,557.19[2] |
| Cohen re: prefiling research & filing Complaint | 4.0 hrs. | $600/hr. | $ 1,500.00[3] |
| Cohen re: Fee Application | 2.4 hrs. | $600/hr. | $ 900.00[4] |
| **TOTAL**: | | | **$33,557.19**[5] |

---

[2] The Court notes that it is inserting the totals as reported by Plaintiff's counsel in the Fee Application. However, according to its calculation, the Court determines that this subtotal should be $9,562.50, and not the $9,557.19 subtotal listed.

[3] *See supra* note 2. According to the Court's calculation, this subtotal should be $2,400.00, and not the $1,500.00 subtotal listed.

[4] *See supra* note 2. According to the Court's calculation, this subtotal should be $1,440.00, and not the $900.00 subtotal listed.

[5] However, using Plaintiff's counsel's stated billed hours and hourly rates, the total attorneys' fees being sought are $35,002.50 (*i.e.*, $21,600.00 + $9,562.50 + $2,400.00 + $1,440.00 = $35,002.50).

(*See* Ex. 14 (ECF No. 19-17 at 3-5), *attached to Green Decl.* (hereafter, the "C&G Invoices").)

Her counsel claimed $2,702.50 in costs consisting of: $400.00 for the filing fee; $150.00 for a *pro hac vice* application fee; and $2,152.50 for 12.3 hours of paralegal work billed at $175.00 per hour. (*See id.* at 6.)

III. <u>Discussion</u>

    *A. Applicable Law re: Attorney's Fees and Costs*

"In calculating attorney's fees, the district court must first determine the 'lodestar–the product of a reasonable hourly rate and the reasonable number of hours required by the case– [which] creates a presumptively reasonable fee.'" *Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014) (brackets in original) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 (2d Cir. 2006) ("In calculating attorney's fee awards, district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate."); *Division 1181 Amalgamated Transit Union-N.Y. Employees Pension Fund and Its Trustees v. D & B Bus Co., Inc.*, 270 F. Supp.3d 593, 617-20 (Part III(E) re: fees), 628 (Part III(F) re: costs) (E.D.N.Y. 2017). The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. *See Hensley*, 461 U.S. at 437, 103 S. Ct. 1933; *see also Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp.3d 398, 403 (E.D.N.Y. 2019)("The fee applicant bears the burden of adequately documenting and justifying the hours worked, rates sought, and costs expended." (citing *Monette v. County of Nassau*, No.

11-cv-539, 2016 WL 4145798, at *3, *10 (E.D.N.Y. Aug. 4, 2015); *Pennacchio v. Powers*, No. 05-cv-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011))); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp.2d 281, 298 (E.D.N.Y. 2012) ("The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." (citing *Hensley*, 461 U.S. at 433)).

        *B.   The Present Case*

        This case strikes a familiar chord with *Pasini v. Godiva Chocolatier, Inc.*, an FACTA and FDCPA case that "involved no discovery, no motion practice (aside from this [Fee Application]), and no contested hearings," but where plaintiff's counsel sought to recover approximately $83,000 in attorneys' fees and costs. *See* Case No. 17-cv-1812 (VEC), slip op. at 1 (S.D.N.Y. May 21, 2018), *aff'd*, 764 F. App'x 94 (2d Cir. 2019)(Summary Order). In *Pasini*, Judge Caproni prefaced her ruling on counsel's fee application with "the Southern adage: pigs get fat and hogs get slaughtered." *Id.* Her Honor acknowledged that "[a]ttorneys who take on consumer protection lawsuits are sometimes pursuing a public good—the individual damages are generally quite modest but there is a public interest in ensuing compliance with federal consumer protection laws. . . . [Thus, attorneys are] entitled to recover reasonable fees." However, Judge Caproni would not countenance "aid[ing] and abet[ting] extortion" where "[p]laintiff's attorneys used FACTA as a cudgel to attempt to extract an unreasonable fee." *Id.* Such a warning should be equally well-heeded in FDCPA cases, as well. (*Cf.*, Green Decl., ¶9-10 (stating, *inter alia*, that C&G's business model "relies very heavily on receipt of statutory fee awards and settlements" and that C&G is "compensated based upon a percentage of any judgment or settlement, or through statutory fee awards (e.g., 15 U.S.C. § 1692k) or settlement inclusive of fees").)

1. <u>Reasonable Hourly Rate</u>

"In setting a reasonable hourly rate, the Second Circuit has stated that the 'district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Valvo v. City of N.Y.*, No. 13-cv-6562, 2018 WL 3999011, at *2[6] (E.D.N.Y. Jan. 23, 2018) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Election*, 522 F.3d 182, 190 (2d Cir. 2008)); *see also Lilly v. City of N.Y.*, 934 F.3d 222, 230 (2d Cir. 2019)(explaining that a district court's determination of a reasonable hourly rate "tak[es] account of all case-specific variables" and is set "by considering all pertinent factors, including the *Johnson* factors" (internal quotation marks and citation omitted)). "This Court follows the Second Circuit's 'forum rule,' which 'generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable rate.'" *Trustees of NE Carpenters Health Pension, Annuity, Apprenticeship, and Labor Mgmt. Coop.*

---

[6] The *Valvor* Court noted the Johnson factors, *to wit*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *2, n.3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974)); *see also, e.g., J.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist.*, 501 F. App'x 95, 99 (2d Cir. 2012)(finding no abuse of discretion in a district court's "conclusion that the complexity and novelty of the case would be reflected in the number of billable hours rather than in a lodestar adjustment").

*Funds v. Cali Enters., Inc.*, No. 18-cv-3556, 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019) (quoting *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011); further citation omitted); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012)(a reasonable hourly rate should be determined through a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district'" (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005))).

"[T]he prevailing rates for attorneys in the E.D.N.Y. . . . are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Cleanup N. Brooklyn*, 373 F. Supp.3d at 404 (citing *Valvo,* 2018 WL 3999011, at *2; *Pocius v. Sec. Auto Sales Inc.*, No. 16-cv-400, 2018 WL 3999649, at *4 (E.D.N.Y. July 6, 2018), *report & recommendation adopted*, 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018)); *see also Cali Enters.*, 2019 WL 2076784, at *5 ("Courts in this district have concluded that approximately $200 to $325 is a reasonable hourly rate for senior associates, and that $100 to $200 is a reasonable hourly rate for more junior associates." (citation omitted)); *McMahon-Pitts v. Sokoloff*, No. 15-cv-4975, 2017 WL 1011473, at *4 (E.D.N.Y. Mar. 15, 2017)(in a FDCPA case, finding requested rates "f[e]ll within the applicable range for attorneys of similar experience in the Eastern District of New York," and "given the attorneys' level of experience and the Court's consideration of the other *Johnson* factors, finding reasonable: rate of $170/hour for junior associate with two years' experience in consumer law; rate of $200/hour for junior associate with three years' experience in consumer law; and, rate of $230/hour for associates with more than five years' experience in consumer law); *id.* at *3 (finding in FDCPA

cases "reasonable hourly rates to be approximately $300-$400 for partners, $200-$300 for senior associates, and $100-$200 for junior associates") (collecting cases); *Litkofsky v. P&L Acquisitions, LLC*, No. 15-cv-5429, 2016 WL 7167955, at *9-10 (E.D.N.Y. Aug. 19, 2016) (stating "[p]revailing rates for experienced attorneys in the Eastern District of New York range from approximately $400 to $400 per hour" (collecting cases); recommending as "reasonable and in line with prevailing rates awarded to counsel in similar cases within this district" an hourly rate of $350 for counsel with extensive FDCPA experience (collecting cases)), *report & recommendation adopted by* 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016); *Chavez v. MCS Claim Servs., Inc.*, No. 15-cv-3160, 2016 WL 1171586, at *4 (E.D.N.Y. Mar. 23, 2016)(collecting cases of attorneys with multiple decades of experience having their hourly rates reduced to $300 and $350); *LG Funding, LLC v. Florida Titl, Inc.*, No 15-cv-631, 2015 WL 5038195, at *3-4 (E.D.N.Y. Aug. 26, 2015)(stating that "[i]n this district, more experienced attorneys, typically partners with upwards of ten years' experience, are approved for rates of $300 per hour and above;" finding where attorneys having "relatively few years of experience" like the ones seeking the fees, *i.e.*, with three and five years' experience, respectively, "may have rates approved as low as $200 per hour" (collecting cases); and, reducing rates from $350/hour to $250/hour for partner with five years' experience and from $300/hour to $200/hour for associate with three years' experience); *Marshall v. Reisman*, No. 11-cv-5764, 2013 WL 1563335, at *2 (E.D.N.Y. Mar. 25, 2013)("*Hourly rates awarded in the Eastern District of New York are typically based on years of experience*, and generally range from $300-$400 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." (internal citations omitted; emphasis added)) (finding reasonable: rate of $300/hour for counsel practicing more than twenty years of which 12 years were spent running own

practice that focused on consumer protection law; rate of $150/hour for recent law school graduate who had two years' experience in consumer protection litigation), *report & recommendation adopted by* 2013 WL 1561478 (E.D.N.Y. Apr. 12, 2013); *cf.*, *Jara v. P.N. Fin., Inc.*, No. 10-cv-6274, 2014 WL 4388515, at *6 (S.D.N.Y. Sept. 4, 2015)(stating it is the fee applicant's "burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates" (quoting *Farbotko v. Clinton*, 433 F.3d 204, 209 (2d Cir. 2005); further citation omitted)), *report & recommendation adopted by* 2014 WL 5100222 (S.D.N.Y. Oct. 10, 2014); *LV v. N.Y. City Dep't of Educ.*, 700 F. Supp.2d 510, 521 (S.D.N.Y. 2010)(instructing that it is the fee applicant's burden to "offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate").

Green, a licensed attorney since sometime in 2016,[7] began Cohen Green PLLC ("C&G"), a "small, two-attorney firm," in October 2018, less than two months before commencing this action. (*See* Green Decl., ¶3; *see also* "NYS Dep't of State, Div. of Corps, Entity Information for Cohen Green PLLC," *attached as* Ex. A to Opp'n (ECF No. 19-19).) Prior to becoming one of C&G's partners (*see id.*), Green was an associate at Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), having worked there since graduating from law school in 2016. (*See* Green Decl., ¶6; *see also* Green Resume, *attached as* Ex. 1 to Green Decl.) Asserting that Fried Frank regularly billed Green's services at an hourly rate of more than $600,

---

[7] In neither Green's Declaration nor resume is there any indication of the date of admission to the New York State bar. The Court presumes the 2016 date based upon Green's law school graduation in 2016 (*see* Green Resume, *attached as* Ex. 1 to Green Decl.) and declaration regarding becoming an associate with Fried Frank "immediately following law school." (Green Decl., ¶6.) (*But, cf.*, Opp'n at 7 (stating, without citation, that Green "is only admitted to practice in New York since June 2017"), and at 8 (noting that Green did not state a graduation date from law school in Green's Declaration).)

Green seeks an hourly rate of $375 in the instant action. (*See* Support Memo at 5.) This appears to be Green's first FDCPA case (*see* Green Decl., ¶44; *cf.*, Opp'n at 8 ("Presumably, this is Attorney Green's first FDCPA case. A search in PACER for any Federal cases in which J. Remy Green appears as an attorney revealed none.")), which, as noted, was resolved with an acceptance of Defendants' offer of judgment made twelve days after the commencement of the case.

Notwithstanding the self-designation as a law partner, the hourly rate sought by Green is not reasonable in this instance. To begin, despite wearing the mantle of "partner," Green does not have the commensurate experience warranting the award of an hourly fee that courts in this District deem appropriate for partners, *i.e.*, attorneys with significantly more relevant experience than that of Green. *See, e.g., Razilova v. Halstead Fin. Servs., LLC*, No. 18-cv-1668, 2019 WL 1370695, at *7 (E.D.N.Y. Mar. 1, 2019)("In recent years, decisions in this District have determined reasonable hourly rates in FDCPA cases at approximately $300-$350 for partners.") (recommending founding partners, who concentrated on FDCPA cases and had more than seventeen years' experience, be awarded hourly rate of $350), *report & recommendation adopted by* 2019 WL 1364399 (E.D.N.Y. Mar. 26, 2019). Yet, as is clear from case law, in the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate. *See, e.g., Jara*, 2014 WL 4388515, at *6 ("In determining reasonable hourly rates, a court should first examine the attorney's experience." (citations omitted)). Hence,

> Plaintiff's requested rates are excessive, given Plaintiff's attorneys' lack of experience. In this district, more experienced attorneys, typically partners with upwards of ten years' experience, are approved for rates of $300 per hour and above. *See Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011)(affirming the district court's opinion that prevailing rates for experienced

> partners range from $300 to 400 per hour).  Partners with fewer
> years of experience, like [Green], may have rates approved as low
> as $200 per hour.

*LG Funding*, 2015 WL 5038195, at *3 (collecting cases); *cf. Dembitzer v. Weinberg Mediation*

*Grp. LLC*, No.17-cv-4088077, 2018 WL 4088077, at *6-7 (E.D.N.Y. Aug. 3,

2018)(recommending that mid-level associate, with five years' experience, have requested

hourly rate of $350 reduced to $250), *report & recommendation adopted by* 2018 WL 4087921

(E.D.N.Y. Aug. 27, 2018); *McMahon-Pitts*, 2017 WL 1011473, at*4 (finding reasonable

requests of hourly rates of: $170 for attorney admitted for three years and practicing consumer

law for two years; $200 for attorney admitted for five years and practicing consumer law for

three years; $230 for attorneys practicing consumer law for more than five years).

    In determining the reasonableness of the attorney fee rate to be applied, the Court must

also consider other factors, such as the type of case presented, the nature of the litigation, and the

size of firm employed.  *See, e.g., Cali Enters.*, 2019 WL 2076784, at *5 (quoting *Siracuse v.

Program for the Dev. of Human Potential*, No. 07-cv-2205, 2012 WL 1624291, at *30 (E.D.N.Y.

Apr. 30, 2012)); *see also Chavez*, 2016 WL 1171586, at *4 ("[T]he Court must determine a

reasonable hourly rate for the legal services performed, using factors such as the labor and skill

required, the difficulty of the questions, the attorney's customary hourly rate, and the experience,

reputation and ability of the attorney." (quoting *Chudomel v. Dynamic Recovery Servs., Inc.*, No.

12-cv-5365, 2013 WL 5970613, at *10 (E.D.N.Y. Nov. 8, 2013); internal quotation marks

omitted)); *Mary Jo C. v. Dinapoli*, No. 09-cv-5635, 2014 WL 7334863, at *5 (E.D.N.Y. Dec. 18,

2014) (identifying, *inter alia*, the size of the firm as one of the considerations in determining

reasonable hourly rates)(citations omitted).  Despite Plaintiff's contention to the contrary, the

instant case was not complex in nature.  Indeed, Green stated that "after . . . conduct[ing]

research as to what freestanding causes of action might exist" to redress the Defendants' alleged misconduct in misleading Rudler regarding settlement of the NYS Judgment dispute by relying upon outdated ethical rules, Green "determined that an FDCPA/NYGBL claim would be *the most straightforward and direct route for relief*." (*See* Support Memo at 3 (emphasis added).) Rudler's acceptance of the Defendants' offer of judgment appears to underscore Green's belief. In that vein, this case involved no: conferences or hearings; motion practice (other than the instant Fee Application); or discovery being conducted.

To the extent Green relies upon the declaration of a Fried Frank partner with whom Green worked and who billed clients for "Green's services at an hourly rate of over $600" (Mac Avoy Decl., *attached as* Ex. 2 *to* Green Decl.), the Court is "'unpersuaded by [Green's] attempt to establish a higher hourly rate by submitting other attorney's affidavits' regarding their opinions as to [Green's] experience, competence, etc." *Mary Jo C.*, 2014 WL 7334863, at *6 n.9 (quoting *M.C. ex rel. E.C. v. Dep't of Educ. of City of N.Y.*, No. 12-cv-9281, 2013 WL 2403485, at *7 (S.D.N.Y. June 4, 2013), *report & recommendation adopted by* 2013 WL 3744066 (S.D.N.Y. June 28, 2013)). Even if that were not so, Mac Avoy makes no mention of Green's experience with FDCPA cases or, as Green asserts, that Green's time was billed at $600 per hour for services rendered in cases in the Eastern District of New York. (*Cf.*, Mac Avoy Decl., ¶¶6-8, *with* Support Memo at 6 ("[A]s noted in the Mac Avboy Declaration . . . , my services have regularly been billed out *in this jurisdiction* at an hourly rate over $600." (emphasis added)).) Similarly, Green's reliance on the *Laffey* Matrix is unavailing. (*See* Support Memo at 7; Green Decl., ¶39; Ex. 10 (*Laffey* Matrix), *attached to* Green Decl.) "[T]he Court points out that '[t]he Laffey Matrix [ ] has not been adopted, or even cited with approval, by any court in this Circuit.'" *Litkofsky v. P&L Acquisitions, LLC*, No. 15-cv-5429, 2016 WL 7167955, at *11

(E.D.N.Y. Aug. 19, 2016)(quoting *Baruch v. Healthcare Receivable Mgmt., Inc.*, No. 05-cv-5392, 2007 WL 3232090, at 5 n.12 (E.D.N.Y. Octo. 30, 2007))(collecting cases).  That is because it contravenes the Second Circuit's "adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits."  *Id.* at *9 (citing *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009); collecting cases).

As to Cohen, other than her resume (hereafter, the "Cohen Resume") (*see* Ex. 1, *attached to* Green Decl.) and a conclusory statement by Green that Cohen's hourly rate of $600.00 is reasonable and "perfectly in line with what attorneys of her experience, qualification, and reputation charge" (Support Memo at 7), there is little upon which this Court can rely to determine if that is so.  *See Hugee*, 852 F. Supp.2d at 298 ("The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." (citing *Hensley*, 461 U.S. at 433)); *McMahon-Pitts*, 2017 WL 1011473, at *2 (same; quoting *Hugee*).  From the Cohen Resume, the Court gleans that Cohen:  graduated from law school in June 2010; is licensed in New York State, presumably since some time in the beginning of 2012[8] when she opened her own law firm, as her work experience prior to May 2012 does not appear to include the practice of law; had no prior experience with FDCPA cases until this case since, as a solo practitioner, she "focus[ed] on criminal defense, civil rights litigation, trusts and estates, New York's Freedom of Information Law and general civil litigation," but as a partner of C&G, which was established approximately six weeks prior to the commencement of this case, she

---

[8]  Cohen lists the State of New York, the Southern District of New York, and the Second Circuit as the bars to which she is admitted; however, she provides no admissions dates.  Nor, notably, does Cohen indicate that she is admitted to the Eastern District of New York.  (*See* Cohen Resume, Ex. 1, *attached to* Green Decl.)

"focus[es] on federal and state litigation, including civil rights, FIOL, defamation, Fair Debt

Collection Practices Act, and general civil litigation". (Cohen Resume.)

In sum, upon consideration of: the record presented, in particular the vagueness regarding

Green's and Cohen's bar admissions and their relevant legal experience, or lack thereof; the

relevant *Johnson* factors; the prevailing rates in this District in comparable FDCPA cases

awarded to attorneys with similar skill levels and expertise as Green and Cohen, as compared

with hourly rates awarded to attorneys with greater skill levels and expertise; the relatively

straightforward nature of this FDCPA case which resolved expeditiously upon acceptance of an

offer of judgment; and, the length of Green's and Cohen's legal careers overall, the Court finds

reasonable in this case an hourly rate of $200.00 for Green and an hourly rate of $215.00 for

Cohen.

### 2. Reasonable Hours

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Constr., Inc.*, No. 06-CV-7148 (GBD) (HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). * * * "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" [*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)] (quoting *Hensley*, 461 U.S. at 434; then quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

*Cali Enters.*, 2019 WL 2076784, at *6; *see also 5316 Church Ave. LLC v. Yhun*, No. 14-cv-7376,

2018 WL 6204615, at *3 (E.D.N.Y. July 18, 2018)(stating that court must determine whether

hours expended on case are reasonable), *report & recommendation adopted by* 2018 WL 6201709 (E.D.N.Y. Nov. 28, 2018); *Mary Jo C.* 2014 WL 7334863, at *8-9 (discussing the reduction of excessive, redundant, or otherwise unnecessary hours). "To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky*, 2016 WL 7167955, at *10 (quoting *Fox. Indus., Inc. v. Gurovich*, No. 03-cv-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005); brackets and ellipsis in *Litkofsky*; further citation omitted). Indeed, "in reviewing a fee application, 'trial courts need not, and . . . should not, become green-eyeshade accountants,' and 'may take into account their overall sense of a suit, and *may use estimates in calculating and allocating an attorney's time.*'" *Cleanup N. Brooklyn*, 373 F. Supp.3d at 407 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))(emphasis added).

To the extent Defendants' opposition to the hours billed can be viewed as raising a disproportionality argument, that argument is rejected. "As the FDCPA is a fee-shifting statute, . . . 'arguments concerning the disproportionality of attorneys' fees to damages are routinely rejected,'" *Tjartjalis v. Prof. Claims Bureau*, No. 14-cv-1412, 2016 WL 4223493, at *1 (E.D.N.Y. Aug. 9, 2016) (quoting *Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp.3d 328, 340 (E.D.N.Y. 2014)), since

> [w]here fee-shifting statutes are applied, the Second Circuit has emphatically stated that:
>
> > [e]specially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-

> shifting statutes is to generate attorneys' fees that
> are *disproportionate* to the plaintiff's recovery.

*Id.* at *1-2 (quoting *Millea v. Metro-North R.R. Co*., 658 F.3d 154, 166 (2d Cir. 2011)).

However, that does not preclude the Court from considering Defendants' rhetorical question: "[I]f she had the means, would . . . Rudler actually have paid Attorney Green $36,259.69 to recover only $1,000.00 in statutory damages?"  (Opp'n at 10 (further stating that "Green has failed to provide any existing retainer or agreement between C&G and Plaintiff Rudler that the Court could use as an indicator of what value the Plaintiff *would have* paid Attorney Green (if she had been a paying client) or what Plaintiff Rudler agreed to be a percentage of recovery entitled to Attorney Green (if on a contingent basis)." (emphasis in original)).  That question goes to Green's use, or lack thereof, of billing judgment.[9]  Yet, the Supreme Court has instructed:  "'In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important [in the statutory fee-shifting context].  Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980)(*en banc*))(emphasis in original).  This Court does not believe a reasonable, paying client, which it assumes Rudler to be, would wish to spend approximately $35,000 to litigate this case.  With that in mind, the Court turns to examining the hours billed by C&G.

---

[9] Like other skills, billing judgment is one that is honed with experience.

(*a.*)  *Re:  Prefiling Research & Filing Complaint*

(i.)  Green

C&G has billed a total of 57.6 hours for Green's time related to prefiling research and filing the Complaint (*see* ECF No. 19-17 at 3-46; hereafter, the "Green Invoice")).  For the reasons articulated below, the Court awards 24.0 hours of Green's billed time.

| Dates Services Billed | Requested Hours | Awarded Hours |
|---|---|---|
| Nov. 2, 2018 | 2.5 | 0.0 |
| Nov.4, 5, 11, 2018 | 12.0 | 12.0 |
| Nov.12, 2018 | 2.2 | 0.0 |
| Nov. 15, 18, 23 | 20.9 | 10.0 |
| Dec. 8, 2018 | 8.1 | 0 |
| Dec. 13, 2018 | 6.1 | 2.0 |
| Dec. 14, 2018 | 5.8 | 0 |
| **TOTALS**: | **57.6** | **24.0** |

*Regarding November 2, 2018*:  According to the Green Invoice, Green billed 2.5 hours "[d]raft[ing] motions for sanctions, discovery," having a "discussion with OC[10]" and with "Client".  (Green Invoice.)  As a vague block entry, it is difficult for the Court to assess the reasonableness of the hours billed.  Moreover, given this entry's close proximity to the October 31 Green Status Letter, in which Green reported the intention of "submitting by mail a motion for sanctions and other appropriate relief" (Green Status Letter at 1), it appears that this time relates to the State Action.  Further, no motions were filed in the instant action, much less motions for sanctions.  Accordingly, none of this time will be considered.

*Regarding November 4, 5, 11, 2018* (*i.e.*, 12.0 hours of research):  On November 4, Green billed 5.6 hours for "[r]esearch[ing] potential claims [and] investigat[ing] viability of FDCPA claim."  (Green Invoice.)  On November 5, Green billed for 2.7 hours spent

---

[10]  As no key was provided for the shorthand used in C&G's Invoices, the Court presumes "OC" to mean "Opposing Counsel".

"[r]esearch[ing] FDCPA law (attn to: conduct in legal proceedings)." (*Id.*) Green billed an additional 3.7 hours on November 11 for "[r]easearch and attention to FDCPA claims for attorney conduct." (*Id.*)

Defendants' main reasons for opposing these research hours is that said research could have been done by C&G's paralegal and in less time by "a competent experienced Attorney." (*See* Opp'n at 14-15.) While true, that is not enough to deny Green the research time billed as Plaintiff's FDCPA theory of misrepresentation was novel, and Green had little, if no, knowledge of the FDCPA prior to the commencement of this action, thereby necessitating said research. Hence, upon consideration of the circumstances of this case, the Court awards the requested 12 hours Green spent researching.

*Regarding November 12, 2018*: After billing for 12.0 hours of research, Green billed an additional 2.2 hours for a "[d]iscussion with FDCPA specialist" and "follow up research". (*Id.*) Considering the 12 hours of research in which Green already engaged and the vagueness of the November 12 entry, it is difficult to discern the necessity or reasonableness of spending 2.2 hours having a discussion with an unidentified FDCPA "specialist" or conducting "follow up research". Rather, based upon the record, *i.e.*, the absence of any further explanation substantiating these requested hours, the Court finds them to be redundant and disallows them.

*Regarding November 15, 18, 23, 2018* (*i.e.*, 20.9 hours of drafting): Green billed 3.1 hours on November 15 for "[r]eview[ing] and find[ing] sample complaints," as well as "draft[ing] complaint re: FDCPA". (*Id.*) On November 18, 8.2 hours were billed by Green for "[d]raft[ing] complaint and conduct[ing] relevant factual investigation/research." (*Id.*) On November 23, Green "draft[ed] and finalize[d] complaint in EDNY action," parenthetically

stating "(research final FDCPA/GBL legal questions)" in the work description, and billed 9.6 hours for that work. (*Id.*)

These block entries are vague, hampering the analysis for reasonableness. Further, "in the typical FDCPA case, experienced attorneys . . . bill less than 5 hours to preparation of a complaint." *Marshall*, 2013 WL 1563335, at *4 (citing *Crapanzano v. Nations Recovery Ctr., Inc.*, No. 11-cv-1008, 2011 WL 2847448, at *2 (E.D.N.Y. June 29, 2011)(noting that counsel billed 2.5 hours to preparing a typical FDCPA class action complaint), *report & recommendation adopted* 2011 WL 2837415 (E.D.N.Y. July 15, 2011)). Additionally, the task of finding sample FDCPA complaints is more appropriately assigned to a paralegal.

The record establishes that the partners of C&G are relatively inexperienced attorneys in the area of consumer law, especially regarding the FDCPA. Yet, Green advocates for the extensive research time billed with the argument that Rudler's case is novel and complex. (*See* Support Memo at 7-9.) Yes and no. The Firm's alleged misrepresentations to Rudler that form the basis for the alleged FDCPA violation is, *arguendo*, novel, *i.e.*, Rudler, as a *pro se* litigant, was feeling pressured to settle the State Action for fear of violating some ethical rule, as the Firm contended, notwithstanding the rules upon which the Firm relied were outdated and no longer applicable. (*See* Support Memo at 2-3; *see id.* at 8 ("Rather than the case resulting from a written communication brought to an attorney's office by a potential client, this case resulted from [alleged] attorney misconduct involving ethically deficient legal pleadings in another case.").) However, that does not also make it complex. *Cf., e.g., Mary Jo C.*, 2014 WL 7334863, at *6 (in assessing reasonableness of hourly rate, acknowledging that case "although novel, was not particularly complex or 'undesirable'"), and n.10 (noting novelty of case would be reflected in number of billable hours (further citation omitted)). Indeed, it is not uncommon

in FDCPA cases for plaintiffs' attorneys to present new claims of alleged misrepresentations that would confuse the hypothetical least sophisticated consumer and thereby violate the FDCPA. *See, e.g., Campagna v. Client Servs., Inc.*, No. 18-cv-3039, 2019 WL 6498171, at *6 n.6 (E.D.N.Y. Dec. 3, 2019)(questioning, rhetorically, whether "nuanced § 1692e claim . . . [was] being pursued in the hopes of finding a new avenue to FDCPA violations"). Moreover, Green had already developed this theory and presented it to the State Court (*see, e.g.*, Green Status Letter; *see also* Support Memo at 9 ("[P]rior to filing [this action], the parties had already discussed the case and staked out legal positions."); it was "repackaged" as an FDCPA claim here because, as Green readily asserted, it was "the most straightforward and direct route to relief." (Support Memo at 3; *see also id.* at 7 ("Here, . . . the case came about because of wrongdoings in [the State Action], and involved evaluation of a variety of remedies at law and equity, before my client and I settled upon FDCPA/NYGBL claims as our approach.").) Therefore, considering: Green's vague block billing; this appears to be the first FDCPA complaint drafted by Green; Rudler's "misrepresentation" theory was, *arguendo*, novel, but had already been significantly development in the State Action; this case was not complex; and C&G's paralegal should have been tasked with searching for sample FDCPA complaints, the Court will award 10 hours for Green's drafting work.

*Regarding December 8, 2018*: An additional 8.1 hours were billed by Green for "[r]esearch[ing] class certification issues, [and] preliminary drafting of class cert[ification] motion." While the Complaint raised class allegations, as noted *supra*, no discovery was conducted in this case. Thus, Green's work on the "class certification issues" was unnecessary as it was premature. Hence, it is disallowed. *See, e.g., Kizer v. Abercrombie & Fitch Co.*, No.

12-cv-5387, 2017 WL 9512408, at *4 (E.D.N.Y. July 24, 2017)(instructing that a court should exclude hours, *inter alia*, that are otherwise unnecessary to the litigation)(omitting citations).

*Regarding December 13, 2018*:  On December 13, 2018, Green billed 6.1 hours to "[f]inalize, file, and request service waiver in EDNY."  In the absence of any further explanation for the amount of time expended on these tasks, the Court finds the requested hours are excessive and the type of tasks which should have been assigned to C&G's paralegal.  Accordingly, the Court reduces the 6.1 hours sought to 2.0 hours.

*Regarding December 14, 2018*:  Green billed 5.8 hours to "review [J]udge Irizary [*sic*] FDCPA decisions" on December 14.  Because the entry is vague, it is difficult for the Court to assess its reasonableness.  Moreover, notwithstanding having been filed in the Clerk's Office in Brooklyn, the case was assigned to the undersigned, not Judge Irizarry.  (*See* Complaint at 1 (with various stamps appended, including "FEUERSTEIN, J."); *see also* Civil Cover Sheet (ECF No. 1-3)(with various stamps appended, including "FEUERSTEIN, J.").)  Therefore, there appears to be no basis to support the necessity of such review, and Plaintiff has provided none.  Thus, these hours are being eliminated as unnecessary.  *See Kizer*, 2017 WL 9512408, at *4.

(ii.)  Cohen

C&G has billed a total of 4.0 hours for Cohen's time relating to prefiling research and drafting of the Complaint (*see* ECF No. 19-17 at 5; hereafter, the "Cohen Invoice"); for the reasons articulated below, the Court awards 2.5 hours of Cohen's billed time.

| Dates Services Billed | Requested Hours | Awarded Hours |
|---|---|---|
| Nov. 18, 2018 | 2.5 | 1.0 |
| Dec. 9, 2018 | 1.5 | 1.5 |
| **TOTALS**: | **4.0** | **2.5** |

*Regarding November 18, 2018*:  Cohen billed 2.5 hours on November 18 for her "[d]iscussion of legal theory with [Green]."  (Cohen Invoice.)  While Green did not also bill for

such discussion time, Green did bill 8.2 hours for researching and drafting Plaintiff's FDCPA Complaint on that date (*cf.*, Green Invoice, Nov. 18, 2018 entry). In any event, while not redundant, 2.5 hours for discussing the "legal theory" of Plaintiff's case is excessive, especially as Green had already spent time developing that theory, having presented the basis for same in State Court. (*See* Green Status Letter; *see also* Support Memo at 9 (stating that prior to commencing this action, "the Parties had already discussed the case and staked out legal positions").) Moreover, to the extent Cohen's and Green's November 18 discussion may have been addressing some nuance of their legal theory in the context of the FDCPA, because of the vagueness of Cohen's billing entry, the Court is stymied in agreeing that 2.5 hours is a reasonable amount of time for that discussion. *See, e.g., Mary Jo C.*, 2014 WL 7334863, at *10 n.13 (noting "meetings and conferences to discuss strategy have, themselves, been found to be impermissibly vague" (citing, as examples, *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp.2d 2020, 2019 (E.D.N.Y. 2007); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp.2d 159, 166 (W.D.N.Y. 2005)). Rather, on the record presented, the Court determined an hour's discussion on the "legal theory" of the case is reasonable. Hence, the requested 2.5 hours is reduced by 1.5 hours.

*Regarding December 9, 2018*: On December 9, Cohen billed 1.5 hours for "[e]dit[ing], research[ing, and] review[ing] summons and complaint." Given that Plaintiff's Complaint was 19 pages in length and three summonses were prepared, the billed time is reasonable and will be awarded.

### (*b.*) *Re: Fee Application*

Despite the multiple hours billed in support of Plaintiff's Fee Application, in this instance, in particular because of the clear terms of the accepted offer of judgment, this Court has

no authority to award them, making them non-recoverable.  *See Lilly*, 934 F.3d at 235.  "[W]hen a settlement cuts off a plaintiff's entitlement to attorney's fees on a specific date, a district court may not award a party attorney's fees for work incurred after that cut-off date.  This includes fees for work performed preparing a fee application submitted to the district court in the event the parties are unable to agree on the attorney's fees to be awarded despite a good faith effort to negotiate.[11]"  *Id.* at 237.  This is so because:

> [l]ike a typical settlement agreement, an accepted Rule 68 offer of judgment is a contract, and it must be interpreted according to ordinary contract principles.  Critically, "[i]f the terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself."

*Id.* (quoting *Steiner v. Lewmar*, 816 F.3d 26, 32 (2d Cir. 2016)).

As in *Lilly*, "[t]he accepted Rule 68 offer at issue here (*i.e.*, the contract) unambiguously states that the recoverable attorney's fees . . . and costs are limited to those incurred [before, up through, and including] the date of the offer," *id.*, which was December 24, 2018.  *Id.*  Yet, "[t]he fees [Green] charged for work on the [F]ee [A]pplication and reply brief in support of that [A]pplication were incurred between [January 7, 2019 and February 19, 2019,] after the cut-off date for fees in the agreement."  *Id.*  Awarding the requested "fees-on-fees" sought by Plaintiff would "violate[] the first principle of contract interpretation[, which is] 'where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.'"  *Id.* at 236 (quoting *Steiner*, 816 F.3d at 31).  By awarding Plaintiff fees beyond what the parties

---

[11]  The Court finds the Defendants engaged in good-faith efforts to resolve the instant fee dispute.  (*See* Opp'n at 5 and note 6 (identifying two specific counter-offers to Green's attorneys' fees demands).)  *Cf., Lilly*, 934 F.3d at 237 n.93 ("declin[ing] to consider whether a district court may, as a matter of equity or otherwise, award fees on fees when a party negotiates in bad faith, despite the presence of a cut-off clause in the Rule 68 offer of settlement agreement").

agreed to would, effectively, be rewriting the parties' contract, which the Court cannot do. *See id.* Hence, neither the 25.5 hours sought by Green nor the 2.4 hours sought by Cohen for working on the Fee Application will be awarded.

### 3. Determination of Costs

Plaintiff seeks the reimbursement of three categories of costs totaling $2,702.50, *to wit*:

(a.)    $400 for its filing fee;

(b.)    $150.00 for Green's *pro hac vice* application; and

(c.)    $2,152.50 for paralegal costs

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Volpe v. Nassau County*, No. 12-cv-2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)( (internal quotation omitted)); *see also Litkofsky*, 2016 WL 7167955, at *12 (citing *Lee v. Santiago*, No. 12-cv-2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013) ("[I]t is the requesting party's burden to support its application, and this means that the requested costs must be substantiated.")). Nonetheless, a court may take judicial notice of the payment of a filing fee and, therefore, award that cost. *See id.* (collecting cases).

The Court will award the following amounts in costs for the reasons articulated, below.

| Category | Awarded Amount |
|---|---:|
| (a.)  Filing Fee | $400.00 |
| (b.)  *Pro Hac Vice* Application | $0.00 |
| (c.)  Paralegal Costs | $315.00 |
| **TOTAL**: | **$715.00** |

(*a*.) *Filing Fee.* The Court takes judicial notice that on December 12, 2018, Plaintiff paid a $400 filing fee when it commenced this case. (*See* Case Docket, Dec. 12, 2018 Docket Entry "FILING FEE: $400" (identifying receipt no. 4653135194).) As the Court

records easily substantiate this cost, it is awarded to Plaintiff.  *See Litkofsky*, 2016 WL 7167955, at *12.

(*b*.)  Pro Hac Vice *Application*.  This Court, concurring with Magistrate Judge Tomlinson "that costs associated with the filing of *pro hac vice* applications are generally not reimbursable," *D&B Buses*, 270 F. Supp.3d at 629 (surveying case law and declining to award costs for *pro hac vice* admission fees), has declined to award an applicant's costs in filing *pro hac vice* motions.  *See Div. 1181 Amalgamated Transit Union – N.Y. Employees Pension Fund v. B&M Escorts, Inc.*, No. 16-cv-2498, slip op. at 13 (E.D.N.Y. Mar. 7, 2019).  It declines to do so here.

(*c*.)  *Paralegal Costs.*[12]

(i.)  Hourly Rate

C&G billed its paralegal's time at $175 per hour.  Plaintiff has failed to provide any background or experience information regarding C&G's paralegal (hereafter, "Paralegal") and in support of the Fee Application.  Yet, "[a]s to paralegals, courts in the Eastern District of New York have held that a range of $70 to $100 per hour is a reasonable fee in matters such as this." *Litkofsky*, 2016 WL 7167955, at * 10 (citing, *inter alia*, *Ferrara v. Prof'l Pavers Corp.*, No. 11-cv-1433, 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013)("Recently, reasonable hourly rates in this district have ranged from . . . $70 to $100 for paralegals." (internal citations omitted)); *see also McMahon-Pitts*, 2017 WL 1011473, at *4 (finding paralegal hourly rated in the Eastern District of New York to fall between $70 and $100)(citing *Sass v. MTA Bus Co.*, 6. F. Supp.3d 238, 261 (E.D.N.Y. 2014); *D'Annunzio v. Ayken, Inc.*, No. 11-cv-3303, 2015 WL 5308094, at *4

---

[12]  The Court notes that paralegal "costs" are customarily considered together with attorneys' fees.  Accordingly, the Court has utilized the same analysis in assessing C&G's paralegal costs as employed in considering C&G's attorneys' fees.

(E.D.N.Y. Sept. 10, 2015)).  Moreover, where an applicant fails to provide background and experience information that would enable a court to assess the reasonableness of a requested rate, a court may use its discretion to award fees at a lower rate.  *See D&A Buses*, 270 F. Supp.2d at 622-23 (citing, *inter alia*, *Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag Ag*, No. 04-cv-2983, 2006 WL 4049155, at *17-18 (S.D.N.Y. Dec. 11, 2006)(awarding fees at rate lower than requested for paralegals and law clerks because the court could not assess the reasonableness of said requests given the absence of background and experience information)).  In the absence of any relevant information about Paralegal that would assist the Court in determining if the hourly rate of $175 is reasonable, and considering the prevailing rates for paralegals in the Eastern District of New York, as well as C&G's status as a newly formed, two-attorney law firm, in its discretion, the Court reduces Paralegal's hourly rate to $90.00.

(ii.)  Billed Hours

C&G has billed a total of 12.3 hours for Paralegal's time; for the reasons articulated below, the Court awards 3.5 hours of Paralegal's billed time.

| Dates Services Billed | Requested Hours | Awarded Hours |
|---|---|---|
| Nov. 7-8, 2018 | 4.1 | 1.5 |
| Nov.9, 2018 | 4.3 | 0.0 |
| Dec. 8, 2018 | 1.9 | 1.0 |
| Jan. 4, 2019 | 2.0 | 1.0 |
| **TOTALS**: | **12.3** | **3.5** |

*Regarding November 7-8, 2018*:  According to C&G's Cost Invoice (*see* ECF No. 19-17 at 6), Paralegal billed 2.3 hours on November 7, 2018, and 1.8 hours on November 8, 2018, to "edit and format complaint".  (Cost Invoice.)  Yet, it was not until November 15, 2018, that Green first billed time regarding the Compliant, *i.e.*, "[r]eview and find sample complaints; draft complaint re: FDCPA."  (Green Invoice (ECF No. 19-7 at 3-4).)  While it is possible that boilerplate formatting could have been undertaken prior to Green's November 15 initial drafting,

it is unclear what type of editing work on the Complaint could have occurred prior to November 15. Therefore, of the 4.1 hours billed for November 7-8, 2018, the Court will permit 1.5 hour for formatting work by Paralegal.

*Regarding November 9, 2018*: Paralegal billed 4.3 hours to "compile documents, line editing, reading/reviewing/organizing materials." (Cost Invoice.) Because this block entry is vague, the Court is thwarted in determining the reasonableness of the time taken to complete the identified tasks. In addition, as the Court observed *supra*, the billing for editing work is questionable since, on November 9, Green had not yet begun drafting the subject Complaint. Moreover, clerical tasks such as organizing case files may be considered part of overhead which should not be compensated. *See LG Funding*, 2015 WL 5038195, at *4 (citations omitted). Therefore, "[t]he Court is eliminating compensation for this work as being both insufficiently documented and seemingly inappropriately billed overhead." *Id.* (citing *Wise v. Kelly*, 620 F. Supp.2d 435, 442 (S.D.N.Y. 2008) (stating courts may delete elements of an award because of insufficient documentation or vague billing)).

*Regarding December 8, 2018*: Paralegal billed 1.9 hours for "case tracking/discussion with [Green]". (Cost Invoice.) Although the claimed time is arguably vague, warranting its elimination or reduction, *see LG Funding*, 2015 WL 5038195, at *4, the Court will presume "case tracking" and Paralegal's discussion with Green related to some type of case management. However, in the absence of any further explanation, the amount of time spent on this task appears excessive; therefore, the Court reduces the requested 1.9 hours to 1.0 hour for Paralegal's case management work. *Cf., Razilova*, 2019 WL 1370695, at *7 (reducing by two-thirds (from 1.5 to .5 hours) the time billed by experienced attorney for reviewing "ecf bounces

following case commencement; update[ing] assigned judge information in database; [and] review[ing] judges [*sic*] rules for familiarity").

*Regarding January 4, 2019*:  Paralegal billed 5.0 hours for "manag[ing] case file/mail correspondence *on both cases*", which C&G reduced to 2.0 hours.  (Cost Invoice (emphasis added).)  Notwithstanding C&G's self-initiated reduction, this entry suffers the same vagueness issue as Paralegal's December 8, 2018 block billing.  Further, in addition to referring to mailings in "both cases", presumably the State Action and the instant one, which would be problematic, mailing is the type of clerical task that should be considered overhead.  *See LG Funding*, 2015 WL 5038195, at *4 (citations omitted).  Accordingly, since C&G's vague block billing inhibits the Court's ability to sufficiently evaluate the billed 2.0 hours for reasonableness, it will be reduced by half, resulting in an allowance of 1.0 hours.

In sum, of the 12.3 hours billed by C&G's Paralegal, a total of 3.5 hours is determined to be reasonable.  Accordingly, Paralegal Costs will be awarded in the total amount of $315.00. (*i.e.*, 3.5 hours at $90/hour).

* * *

Hence, the final summary of fees and costs awarded is as follows:

| Category | Hours | Hourly Rate | Subtotals |
|---|---|---|---|
| Green's fees<br>re:  prefiling research & filing Complaint | 24.0 hrs. | $200/hr. | $    4,800.00 |
| Green's fees<br>re:  Fee Application | 0.0 hrs. | $200/hr. | $         0.0 |
| Cohen's fees<br>re:  prefiling research & filing Complaint | 2.5 hrs. | $215/hr. | $      537.50 |
| Cohen's fees<br>re:  Fee Application | 0.0 hrs. | $215/hr. | $        0.00 |
| Costs (including Paralegal's fees) | | | $      715.00 |
| **TOTAL**: | | | **$    6,052.50** |

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Fee Application is GRANTED in part, such that she is awarded **$6,052.50**, which consists of $5,337.50 in attorneys' fees and $715.00 in costs.

SO ORDERED this 29th day of January 2020 at Central Islip, New York.

/s/  *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge